**IN THE**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>JASON EDWARD THOMAS CARDIFF,<br><br>Defendant-Appellant. | C.A. Nos. 25-3616, 25-3781<br>D.C. No. 5:23-cr-00021-JGB<br>(Central Dist. Cal.)<br><br>**GOVERNMENT'S OPPOSITION TO DEFENDANT-APPELLANT'S MOTION TO STRIKE GOVERNMENT'S OPPOSITION FOR LACK OF DELEGATED AUTHORITY** |

Plaintiff-Appellee United States of America, by and through its counsel of record, hereby submits this Opposition to Defendant-Appellant Jason Edward Thomas Cardiff's ("Cardiff") Motion to Strike Government's Opposition for Lack of Delegated Authority ("Motion to Strike"). (*See* Dkt. No. 29.)

## I.     INTRODUCTION

Cardiff is a fugitive who has absconded to Ireland in violation of multiple court orders. His instant Motion to Strike is untimely and moot and his allegations regarding the lack of prosecutorial authority are baseless.

First, Cardiff's motion and underlying appeal should be denied under the fugitive disentitlement doctrine. Second, the motion should be denied as untimely and moot given that the Court has already denied Cardiff's request to file medical records ex parte under the applicable legal standard; that ruling would be unaffected even if the Court strikes the Government's opposition. Third, Cardiff's motion should be denied because he fails to provide any evidence that supports his contention that U.S. Department of Justice Trial Attorneys lack authority to prosecute federal cases.

## II. BACKGROUND

On October 1, 2025, Cardiff filed a Motion to Seal Records and for In Camera Review of Records Without Service on Counsel regarding Volume 4 of the excerpts of record. (Dkt. No. 19.[1]) Cardiff requested the Court "[m]aintain under seal the medical exhibits" and "Conduct an Ex Parte Review of the Documents Without Service to Counsel [sic], or in the alternative, direct the Government to designate appellate counsel authorized to receive medical records filed under seal." (*See* Dkt. 20 at 6.) Cardiff claimed that he could not provide the medical records to the

---

[1] The docket numbers refer to the docket in Case No. 25-3616. "ER" refers to appellants' Excerpts of Record filed in the underlying appeal; "Mot." refers to appellant's Motion to Strike Government's Opposition For Lack of Delegated Authority; and "Notice" refers to appellant's Notice of Supplemental Authorities. "CR" refers to the Clerk's Record in the district court and is followed by the applicable docket number.

undersigned, the attorney of record for the Government, because "Mr. Sebastian has not entered an appearance in this appeal." (*Id.* at 5.) Cardiff concedes, however, that the undersigned confirmed directly to defense counsel that the undersigned is the attorney of record and "information in PACER is correct and will be updated" if there are any changes. (Mot. at 3-4.[2])

Defense counsel emailed Volume 4 of the excerpts to the Acting Chief of the Criminal Division and the general mailbox for the Criminal Appeals Section of the United States Attorney's Office, Central District of California, on the evening of October 8, 2025, mooting his request for ex parte filing of the medical records. (*See* Dkt. No. 31.1 at 5.)

The Government filed its opposition to Cardiff's motion to seal on October 9, 2025. (*See* Dkt. No. 22.)

On October 14, 2025, Cardiff filed a reply supporting his motion to seal requesting, among other things, an order that precludes the undersigned "from having access to Appellant's medical records" because the undersigned submitted briefs on behalf of the Government in the lower court and those briefs (1) requested Cardiff be declared a fugitive when he violated multiple court orders,[3] and (2) opposed several of

---

[2] Defendant attributes the quotation on pages 3-4 of his Motion to Strike to Ex. 3 of defense counsel's declaration, but the included exhibit does not contain the quoted email.

[3] The district court declared defendant a fugitive and issued a warrant for his arrest on February 5, 2025. (CR 195-196.)

Cardiff's motions to dismiss and a motion to suppress related to evidence provided by a court-appointed receiver.[4] (*See* Dkt. No. 23.1.)

On October 31, 2025, this Court granted in part and denied in part Cardiff's motion to seal. (*See* Dkt. No. 27.1.) The Court permitted Volume 4 of the excerpts to be filed under seal but denied Cardiff's request "to file Volume 4 ex parte because appellant Cardiff has not shown that service on appellee is unwarranted. *See* 9th Cir. R. 27-13(e)." (*Id.*) The Court ordered that:

> [w]ithin 30 days, appellant Cardiff must either (1) serve Volume 4 on appellee and provide proof of service to this court, (2) move to strike Volume 4 and file a revised opening brief that omits any reference to the documents in Volume 4, or (3) file and serve on appellee a revised Volume 4 and a revised opening brief, along with a motion to file a replacement opening brief and, if necessary, a renewed motion to seal.

(*Id.*)

On November 19, 2025, Cardiff filed the instant Motion to Strike and a Motion for Protective Relief or Temporary Stay and to Modify the Court's October 31, 2025 Order Pending Resolution of Motion to Strike and For Expedited Consideration Thereon ("Motion for Stay"). (*See* Dkt.

---

[4] The district court denied defendant's first motion to dismiss on June 13, 2024. (CR 79.) The district court denied defendant's four subsequent motions to dismiss and his motion to suppress on August 19, 2025. (CR 267.) The district court denied defendant's motion for reconsideration of the denial of his first motion to dismiss on November 5, 2025. (CR 283.)

Nos. 29-30.) The motions dispute the validity of the Government's October 9, 2025 opposition. (*Id.*)

On November 24, 2025, the Government moved for an extension of time to file its oppositions to Cardiff's outstanding motions, which included a declaration from the undersigned. (*See* Dkt. 31.1.) The same day, Cardiff filed his opposition to the extension request and incorrectly claimed that the undersigned "lacks authority to appear for the Government before this Court because the Attorney General has not delegated authority to his agency, the Enforcement and Affirmative Litigation Bureau ("EALB") to prosecute cases in either civil or criminal courts."[5] (Dkt. No. 32.1 at 2-3.)

The next day, the Court granted Cardiff's request for a temporary stay of the requirement to serve Volume 4 of the excerpts on the Government pending the Court's resolution of the Motion to Strike and granted the Government's extension request to file its opposition to the motion by December 15, 2025.

//

//

---

[5] The correct name of the unit is the Enforcement and Affirmative Litigation Branch. (*See* Dkt. No. 31.1 at 4.) Contrary to defendant's assertion, the EALB is not an agency; it is a unit within the Civil Division of the U.S. Department of Justice. (*See* Dkt. No. 32.1 at 2-3; *see also* Dkt. No. 31.1 at 4.)

## III. ARGUMENT

### A. Cardiff's Motion Should be Denied Under the Fugitive Disentitlement Doctrine

Cardiff's Motion to Strike should be denied as he is a fugitive who has absconded to Ireland and remains there in violation of multiple court orders. Under the fugitive disentitlement doctrine, "an appellate court may dismiss the appeal of a defendant who is a fugitive from justice during the pendency of [his] appeal." *United States v. Terabelian*, 105 F.4th 1207, 1213 (9th Cir. 2024) (quoting *Ortega-Rodriguez v. United States*, 507 U.S. 234, 239 (1993). The doctrine is grounded in equity and disallows an appellant from using the resources of the Court while the appellant remains a fugitive outside of the Court's jurisdiction. *Id.* The doctrine "serves an important deterrent function and advances an interest in efficient, dignified appellate practice." *Id.* (quoting *Ortega-Rodriguez*, 507 U.S. at 242).

On February 5, 2025, the lower court declared Cardiff a fugitive from justice and issued a warrant for his arrest. (CR 195-196.) In a separate order, dated May 23, 2025, the lower court denied Cardiff's request to set aside forfeiture and found that the Cardiff "willfully breached his conditions of release and remains a fugitive in violation of multiple orders from this Court." (1-ER-13.)

Cardiff filed an appeal of the denial of his motion to set aside forfeiture along with improper requests for relief. (*See* Dkt. Nos. 20, 26,

29-30.) He also filed a petition for rehearing and rehearing en banc for the denial of his Writ of Mandamus, which followed another motion requesting expedited relief in that case. (*See Jason Edward Thomas Cardiff v. United States District Court for the Central District of California, Riverside*, C.A. No. 25-5654.) These filings were submitted in the past few months while appellant remained a fugitive from justice.

Cardiff also filed 31 ex parte applications, motions, and replies and notices supporting his ex parte applications and motions in the district court, all while remaining a fugitive from justice. (CR 179, 180, 182-183, 185, 200, 207-209, 220, 223, 226, 228, 231-239, 246, 252, 272-273, 276-278, 280, 282). In ruling on Cardiff's motion to set aside bail judgment, the district court found:

> Cardiff has repeatedly used his medical condition – which the Court carefully considered and rejected as a reason preventing him from traveling – to delay and purposefully evade returning to the United States as ordered by the Court. The Court is also gravely concerned that Cardiff does not intend to return to the United States any time soon or even at all, despite Defendant's assurances to the contrary... Cardiff lacks credibility, and his continued disregard to his conditions of release and this Court's orders amount to unacceptable and egregious conduct.

(1-ER-14 (citations omitted).) Through his voluminous and repetitive filings, Cardiff continues to tax the judicial system, all the while remaining outside the jurisdictional reach of justice. In the interests of

justice, this Court should issue an equitable remedy pursuant to the fugitive disentitlement doctrine preventing appellant from using judicial resources while shielding himself from the jurisdictional reach of the courts. Denial of the present motion would deter Cardiff's willful failure to comply with court orders and incentivize his surrender to U.S. authorities.

In short, Cardiff's motion should be denied to sanction him for actively disobeying the district court's orders and deter his further abuse of the judicial system.

## B. Cardiff's Motion Should Be Denied as Moot and Untimely.

Cardiff's request for ex parte filing is moot as he has already provided the Government with his sealed excerpt. (Dkt. No. 31.1 at 5 n.3.) The motion should therefore be denied on that basis as well.

The Court has already ruled on Cardiff's motion to seal. (*See* Dkt. No. 27.1.) Cardiff's request to strike the Government's opposition does not invalidate the Court's order requiring production of the sealed excerpt of record. Cardiff's motion to seal was denied in part because he failed to show "the potential for irreparable injury" that would result from serving the Government with a copy of his medical records which are the basis for his appeal. *See* 9th Cir. R. 27-13(e). Cardiff also failed "to request the least restrictive scope of sealing" when he requested his records be filed in camera. *Id*. Because of these failures, the Court found that "Cardiff has not shown that service on the appellee is unwarranted."

(Dkt. No. 27.1 at 2.) Even if the Court were to strike the Government's response, it would not invalidate the Court's ultimate ruling based on the Cardiff's failures to show relief was warranted.

Accordingly, Cardiff's motion should be denied as moot and untimely.

## C. Cardiff's Assertions Regarding Prosecutorial Authority are Unsupported and His Filings are Rife with Citation Irregularities

Cardiff fails to cite any statute, regulation, or case that supports his contention that the undersigned is unable to continue to represent the Government in this matter. The lower court denied Cardiff's similar motions regarding the undersigned's litigation authority finding:

> Defendant cites no authority supporting his contention that Mr. Sebastian cannot properly litigate this case on behalf of the Government. . . United States v. Providence Journal Co. [ ] offers no on-point authority on this subject.[] 485 U.S. 693 (1988). That case involved actions by a Government attorney before the Supreme Court who did not have authorization from the Solicitor General as was required by statute and regulation. Id. at 694–95. Those specific statutes and regulations are not at issue in this case, which is before a District Court and not the Supreme Court. As such, Providence Journal Co. does nothing to support Defendant's contentions. Given the lack of any support for Defendant's contention that Mr. Sebastian is not authorized to represent the Government, Defendant's [motion to strike] and [ex parte application to stay proceedings] are **DENIED**.

(CR 283 at 6-7 (attached as Ex. 1).)

Cardiff's Motion to Strike in this case also fails to cite any authority supporting his contention and it is rife with citation irregularities. Just

as in the lower court, Cardiff continues to cite *United States v. Providence Journal Co.,* 485 U.S. 693 (1988), for legal propositions not contained in the Supreme Court's opinion. Cardiff's current unsupported claim that *Providence Journal Co.* requires that "the United States must produce competent evidence of lawful appointment or delegation," (Mot. at 17), is false.

Likewise, Cardiff miscites *United States v. Ramirez*, No.5:258-cr-00264-SSS, Dkt. 56 (C.D. Cal. October 28, 2025)*,* when he claims "[t]he *Ramirez* court made clear that once a defendant raises a non-frivolous challenge to a Government attorney's authority, the Government bears the burden of producing valid evidence of lawful delegation or appointment." (Mot. at 10.) The *Ramirez* court did not place such a duty or burden on the Government. In fact, the *Ramirez* court focused only on the eligibility of a First Assistant United States Attorney to serve under the Federal Vacancies Reform Act during a vacancy in the office of United States Attorney, none of which applies to the undersigned.

Cardiff makes a comparable false claim in his Notice of Supplemental Authorities:

> In *United States v. Gantt,* 194 F3rd 987, 999 (9th Cir. 1999), this Court held that when a defendant challenges a government attorney's authority, the burden rests squarely on the Government to produce documentary proof of a valid statutory appointment, and authority cannot be presumed.

(Notice at 1.) This premise, however, is found nowhere within the case. The decision discusses Federal Rule of Criminal Procedure 41(d)'s service requirement of a search warrant upon a homeowner prior to the search occurring. The pin cite that Cardiff provides pertains to the Government's authority pursuant to 18 U.S.C § 3731 to file interlocutory appeals, and the certification of the United States Attorney that must accompany interlocutory appeals. The instant motion is not a government appeal governed by the certification requirements of 18 U.S.C § 3731. *Gantt* is inapplicable to the instant motion, and Cardiff was already notified by the district court that the certification required by 18 U.S.C. § 3731 is not relevant here. Explaining why *United States v. Weyhrauch,* 544 F.3d 969 (9th Cir. 2008), which also addressed 18 U.S.C. § 3731, was inapposite, the district court stated: "This case involves no certification of an appeal." (Ex. 1 at 6-7.) Like *Weyhrauch*, *Gantt* is inapposite to the current case and provides no insight into the propriety of undersigned's appearance in this matter.

Cardiff further claims, "[t]he EALB appears nowhere in Part 0. Under DOJ's own regulations, only those components that appear in Part 0 possess litigating authority. The EALB is not listed. Thus, EALB has no civil litigation authority." [6] (Mot. at 14.) Cardiff, however, miscites Part 0 of the pertinent regulations, which he asserts is the controlling

---

[6] Defendant concedes that the Consumer Protection Branch had authority prior to the renaming of the branch. (Mot. at 7.)

regulation supporting his claim:

> [t]he Civil Division's litigating authority is specifically assigned to enumerated components in 28 C.F.R. §§ 0.45-0.53. Those branches include: Torts, Commercial Litigation, Federal Programs, Office of Immigration Litigation, Appellate Staff and (until abolished) the Consumer Protection Branch.

(*Id.*) As evidenced from the plain language of the regulations Cardiff has cited, the actual components are not enumerated in the regulations as he claims. (*See* 28 C.F.R. §§ 0.45-0.53.) This fact alone invalidates Cardiff's entire argument.

Similar mischaracterizations and inaccurate citations are found throughout the motion. Cardiff claims that 28 U.S.C. § 519 provides the "exclusive structure through which DOJ attorneys obtain authority to act." (Mot. at 9.) This is incorrect. Section 519 states that the Attorney General has supervisory authority over "all United States attorneys, assistant United States attorneys, and special attorneys appointed under Section 543." The section only discusses the Attorney General's overarching supervision authority for certain attorneys and does not reference other Department attorneys, nor does it discuss delegation of authority as Cardiff asserts. *Id.*

Cardiff's Notice falsely claims that the holdings in *United States v. Giraud,* Nos. 25-2635, 25-2636, 2025 U.S. App. LEXIS 31083 (3d Cir. Dec. 1, 2025) and *United States v. Comey*, No. 1:25-cr-00272-MSN, 2025 U.S. Dist. LEXIS 232850 (E.D. Va. Nov. 24, 2025) support his argument.

Those cases, however, involve the complex statutory schemes that govern temporary leadership in United States Attorneys offices while there is no Senate-confirmed United States Attorney. These cases are inapplicable to Department attorneys like the undersigned. Indeed, Cardiff's pin cites from *United States v. Giraud* refer to portions of the decision that discuss the FVRA specifically, which does not apply to the undersigned.

Cardiff's reliance on *United Sates v. Mowat*, 582 F.2d 1194 (9th Cir. 1978), for the proposition that "unpublished rules or in this case, delegations, are invalid against persons without actual notice" (*See* Mot. at 7, 8, 15) is misplaced. *Mowat* held that "[t]he Administrative Procedure Act's requirement for publication of regulations in the Federal Register does not affect persons who have actual and timely notice of the regulation." 582 F.2d at 1201 (internal quotations omitted.) Cardiff's assertions to the contrary notwithstanding, the Administrative Procedure Act does not require the minutia of case assignments to prosecutors to be published in the Federal Register.[7] *See* 5 U.S.C. § 552. Regardless, Cardiff concedes he received actual and timely notice of the changes within the Department. (*See* Dkt. No. 29.2.)

//
//

---

[7] Cardiff likewise concedes that "DOJ's internal regulations do not expressly state that every delegation must be issued by written order." (Mot. at 6.)

### D. Department Attorneys Have Authority to Represent the Government in this case.

Section 510 of Title 28 of the U.S. Code provides that the Attorney General may "make such provisions as [s]he considers appropriate authorizing the performance by any other office, employee, or agency of the Department of Justice of any function of the Attorney General." In addition:

> [t]he Attorney General or any other officer of the Department of Justice. . . may, when specifically directed by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

28 U.S.C. § 515(a).

Section 0.13 of Chapter 28 of the Code of Federal Regulations further clarifies:

> Each Assistant Attorney General and Deputy Assistant Attorney General is authorized to exercise the authority of the Attorney General under 28 U.S.C. § 515(a), in cases assigned to, conducted, handled, or supervised by such official, to designate Department attorneys to conduct any legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrates, which United States attorneys are authorized by law to conduct, whether or not the designated attorney is a resident of the district in which the proceeding is brought.

Department attorneys do not require a local United States attorney or assistant United States attorney to prosecute cases. *See* 28 U.S.C.

§ 0.13.[8] The provisions detailed above allow "the Attorney General and other senior-level DOJ personnel. . . to give authority otherwise restricted to United States Attorneys to certain other attorneys, considerably expanding who may undertake those tasks." *Weyhrauch,* 544 F.3d at 974. Department attorneys are also not limited by residency restrictions and may prosecute cases across the United States. *See* 28 U.S.C. § 0.13. The undersigned is duly admitted to practice in the United States Court of Appeals for the Ninth Circuit pursuant to Federal Rule of Appellate Procedure 49 and Ninth Circuit Rule 46-1 and is the attorney of record in this case.

Moreover, as of November 30, 2025, the undersigned, along with the prosecution and litigation of this case, was transferred to the Fraud Section of the Criminal Division of the Department. (*See* Dkt. 31.1 at 6.) Defendant concedes that the Criminal Division has authority to prosecute this case. [9] (*See* Dkt. 32.1 at 3.)

---

[8] Though 28 U.S.C. § 515 and 28 C.F.R. § 0.13 permit Department attorneys to conduct litigation throughout the United States without local United States Attorney's Offices, the instant litigation is conducted in conjunction with the United States Attorney's Office for the Central District of California. The Government's filings include headings and signatures that reflect such, and the undersigned provided a declaration confirming the same. (*See* Dkt. Nos. 22, 31.)

[9] Since the Defendant concedes the Criminal Division has authority, although the Government's prior filings in these cases are all sound for the reasons explained above, should the Court request it, the Government will refile its opposition to defendant's motion to seal.

## VI.  CONCLUSION

For the forgoing reasons, the Government respectfully requests this Court deny the Motion to Strike.

DATED: December 15, 2025

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General

LORINDA I. LARYEA
Acting Chief, Fraud Section
Criminal Division
U.S. Department of Justice

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER P. ROBBINS
Assistant United States Attorney
Chief, Criminal Appeals Section

RANEE A. KATZENSTEIN
Assistant United States Attorney
Acting Deputy Chief, Criminal Appeals Section

*/s/*

MANU J. SEBASTIAN
Trial Attorney, Fraud Section
Criminal Division
U.S. Department of Justice

Attorneys for Plaintiff-Appellee
UNITED STATES OF AMERICA

## CERTIFICATE OF COMPLIANCE

I certify that:

1.     This response complies with the length limits permitted by Fed. R. App. P. 27(d) because the response contains 3,523 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

2.     This response complies with the typeface requirements and the type-style requirements of Fed. R. App. P. 27(d) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

DATED: December 15, 2025

*/s/*

MANU J. SEBASTIAN
Attorney for Plaintiff-Appellee
UNITED STATES OF AMERICA

# EXHIBIT 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CRIMINAL MINUTES—GENERAL

| Case No. | **EDCR 23-0021 JGB** | Date | November 5, 2025 |
|---|---|---|---|
| Title | *Untied States v. Jason Edward Thomas Cardiff* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Government:    Attorney(s) Present for Defendant(s):

None Present    None Present

**Proceedings:    Order (1) GRANTING Government's Ex Parte Application to Correct Warrant for Arrest Nunc Pro Tunc (Dkt. No. 268); (2) DENYING Defendant's Motion for Reconsideration (Dkt. No. 272); (3) DENYING Defendant's Request for an Order to Show Cause (Dkt. No. 273); (4) DENYING Defendant's Ex Parte Application to Stay Proceedings; and (5) VACATING the November 10, 2025, Hearing (IN CHAMBERS)**

Before the Court is an ex parte application to correct a warrant for arrest nunc pro tunc filed by the United States ("Application," Dkt. No. 268), and three motions filed by Defendant Jason Edward Thomas Cardiff ("Defendant" or "Cardiff"): (1) a motion for reconsideration of the Court's order denying Defendant's first motion to dismiss; (2) Defendant's motion to strike and request for an order to show cause; and (3) Defendant's ex parte application to stay proceedings. ("MFR," Dkt. No. 272; "MTS," Dkt. No. 273; "ASP," Dkt. No. 278.)  The Court finds these matters appropriate for resolution without a hearing.  See L.R. 7-15.  After considering the papers filed in support of and in opposition to the Application, MFR, MTS, and ASP, the Court **GRANTS** the Application and **DENIES** the MFR, MTS, and ASP.

## I.    BACKGROUND

Defendant Cardiff is charged with three crimes: (1) access device fraud under 18 U.S.C. § 1029(a)(5) ("Count One"); (2) aggravated identity theft under 18 U.S.C. § 1028A(a)(1) ("Count Two"); and (3) witness tampering under 18 U.S.C. § 1512(b)(2)(B) ("Counts Three and Four"). ("Indictment," Dkt. No. 1.)  Cardiff also faces criminal forfeiture. (Id.)  On April 8, 2024, Defendant moved to dismiss the Indictment, or, in the alternative, to suppress evidence. ("First

**CRIMINAL MINUTES— GENERAL**    Initials of Deputy Clerk mg

MTD," Dkt. Nos. 45, 52.)  On June 13, 2024, the Court denied the First MTD. ("First MTD Order," Dkt. No. 79.)

Due to Defendant's subsequent failure to appear in Court and his apparent presence in Ireland despite the Court's orders to return to the United States, on February 5, 2025, the Court granted an order that: (1) declared Defendant a fugitive; (2) vacated Defendant's trial date and the tolling of the Speedy Trial Act; and (3) issued an arrest warrant against Defendant. (Dkt. No. 196.)

Between September 9, 2024, and April 27, 2025, Defendant repeatedly moved the Court for dismissal of the indictment against him and suppression of evidence.  On August 19, 2025, the Court issued an order denying Cardiff's five motions.  (Dkt. No. 267.)

On September 17, 2025, the Government filed its Application to correct a warrant for Defendant's arrest.  (Application.)  Defendant opposed that same day.  ("Application Opposition," Dkt. No. 270.)  On October 13, 2025, Defendant filed his MFR.  (MFR.)  On October 17, 2025, he filed his MTS.  (MTS.)  The Government opposed the MFR and MTS on October 20, 2025.  ("MFR Opposition," Dkt. No. 274; "MTS Opposition," Dkt. No. 275.)  Defendant replied in support of the MFR on October 27, 2025.  ("MFR Reply," Dkt. No. 277.)  On October 29, 2025, Defendant filed his ASP.  (ASP.)  The Government opposed on October 30, 2025, and Defendant replied on October 31, 2025.  ("ASP Opposition," Dkt. No. 279; "ASP Reply," Dkt. No. 280.)

## II.    FACTUAL ALLEGATIONS

The Court extensively outlined the factual allegations in this case in its August 19, 2025, order and declines to do so again here, but that order is available for reference.  (See Dkt. No. 267.)  The Court addresses only the specific facts relevant to the present Application, MFR, and MTS.

### A.  Application

On February 5, 2025, the Court issued a Warrant for Arrest for Defendant.  ("February Warrant," Dkt. No. 195.)  The February Warrant mistakenly listed a third party's name who has no relation to the case on the second page of the docket entry.  Other pages of the February Warrant and all biographical information on the second page, however, properly referred to Defendant.  The Government contends that this was a clerical error.

Defendant objects to the Application being made on an ex parte basis and requesting nunc pro tunc relief.
//
//
//
//

**CRIMINAL MINUTES—GENERAL**                    Initials of Deputy Clerk mg

## B.  MFR

Defendant's MFR requests reconsideration of the Court's order on his First MTD. Specifically, he alleges "new facts[,] IRS FOIA responses, transcripts, and sworn official statements" that did not exist at the time of his First MTD in 2024.  (MFR at ii.)  These materials, he argues, show that "the Receiver [in the civil proceedings related to Defendant]—an officer of this Court—submitted a forged 'Amended IRS Proof of Claim.'"  (Id. at ii, 1.)  Specifically, Defendant argues that the Receiver filed a forged Amended IRS Proof of Claim in the civil FTC receivership action related to his criminal proceedings.  Defendant believes that document was forged in part based on a FOIA response received in May 2025 that "confirmed that no such amended claim exists, no correspondence or transmission occurred, and no IRS employee authorized or issued the document."  (Id. at 4.)

The Government contends that Plaintiff's MFR is procedurally improper and relies on information that has previously been rejected by the Court as a basis for a different outcome. (MFR Opp'n at 1.)

## C. MTS and ASP

Defendant requests that the Court strike the Government's improper ex parte communication, strike the Government's pleadings for DOJ's counsel's lack of authority to file pleadings, and order the Government to show cause why DOJ counsel should not be held in contempt for ex parte communications with the Court.  (MTS, ASP.)  As to Defendant's request to strike an improper ex parte communication, Defendant alleges that on October 17, 2025, the Government sent an improper ex parte communication to the Court through the Deputy Clerk inquiring about the Government's pending application to correct the warrant for Defendant's arrest.  (MTS at 2-3.)  Defendant also seeks an order to show cause why Government counsel engaged in such ex parte communications.  (Id. at 7.)

With respect to the request to strike or stay for lack of authority to file pleadings, Defendant argues that Manu Sebastian is a trial attorney who is not authorized to file pleadings on behalf of the Enforcement and Litigation Branch ("EALB"), and is improperly filing as a non-Assistant United States Attorney on behalf of the Consumer Protection Branch ("CPB"), which no longer exists.  (MTS; ASP.)

## III.  LEGAL STANDARDS

## A.  Application

"[A] nunc pro tunc order is typically used to correct clerical or ministerial errors."  Singh v. Mukasey, 533 F.3d 1103, 1110 (9th Cir. 2008) (internal citations omitted).  Such an order "done now" can "have the same legal force and effect as if done at [the] time when it ought to have been done."  Id. (internal citations omitted).

### B.  MFR

"The Federal Rules of Civil Procedure do not provide for a 'Motion for Reconsideration' but such motions may properly be considered either a Rule 59(e) motion to alter or amend judgment or a Rule 60(b) motion for relief from judgment," provided a judgment has been entered.  Hamilton Plaintiffs v. Williams Plaintiffs, 147 F.3d 367, 371 n.10 (5th Cir. 1998).

Rule 60(b) provides for relief from a final judgment, order, or proceeding upon a showing of the following:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

In this district, motions for reconsideration are also governed by Central District Local Rule 7–18. "Courts in this district have interpreted Local Rule 7-18 to be coextensive with Rules 59(e) and 60(b)." Tawfilis v. Allergan, Inc., 2015 WL 9982762, at *1 (C.D. Cal. Dec. 14, 2015). Local Rule 7-18 provides that a motion for reconsideration of the decision on any motion may be made only on the grounds of:

> (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

L. R. 7-18.

Motions to reconsider are committed to the discretion of the trial court. Arteaga v. Asset Acceptance, LLC, 733 F. Supp. 2d 1218, 1236 (E.D. Cal. 2010).  Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enterprises, Inc. v. Est. of Bishop, 229 F.3d 877, 890 (9th Cir. 2000) (citation omitted).
//
//

CRIMINAL MINUTES—GENERAL                    Initials of Deputy Clerk mg

## IV.  DISCUSSION

### A.  Application

The Government characterizes the incorrect name on the warrant as a "typographical error in the supplemental pages of the docket entry." (App. At 2.)  The remaining contents of the docket entry is entirely related to Defendant, not to "Graham Hefner," the individual whose name is on the second page.  (Dkt. No. 195.)  While the name on an arrest warrant is certainly very important, it is plain that the warrant as issued in February was intended to refer to Defendant, and in virtually every respect does so.  Defendant characterizes the warrant as authorizing "the arrest of a person not before this Court," a "defect [that] cannot be erased retroactively."  (App. Opp'n at 5.)

The Court agrees with the Government.  It is plain that the substitution of Defendant's name on the second page was a typographical error, given that Defendant's name elsewhere appears on the document, and the entire remaining contents of the document plainly refer to him.  As such, the Court **GRANTS** the Government's Application.  The Clerk is directed to correct the name "Graham Hefner" on the second page of the warrant to read "Jason Edward Thomas Cardiff" and to reissue the warrant nunc pro tunc to February 5, 2025.

### B. MFR

The Court has been clear about its position on dismissing the indictment against Defendant based on fraud on the court:

> The Court finds that the Fifth MTD implicates evidentiary issues that cannot be addressed in a pre-trial motion to dismiss because it raises inherently factual questions that "invade the province of the ultimate finder of fact." (See, e.g., Fifth MTD at 9 ("Each of the four charges against Mr. Cardiff relies heavily on evidence and records provided by the Receiver, a court-appointed officer whose repeated acts of forgery have irreparably tainted the judicial process. The Receiver's misconduct renders any derivative evidence inadmissible and infects the integrity of the entire prosecution."); see also Shortt Accountancy Corp., 785 F.2d at 1452; Lundstedt, 997 F.2d at 667 (a "district court cannot grant a motion to dismiss an indictment if the motion is substantially founded upon and intertwined with evidence concerning the alleged offense") (citation modified); Jensen, 93 F.3d at 668 ("A motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence.").

(Dkt. No. 267 at 23.)  While Defendant presents the conclusions he draws from his FOIA request as dispositive of his allegations of fraud on the court, the Government presents ample reason to doubt what such FOIA returns show.  For example, the Government points out that, while the IRS did not return a copy of the document Defendant claims is fraudulent, Defendant appears to have used different identifiers than those included on the purportedly fraudulent document when

**CRIMINAL MINUTES— GENERAL**

he requested materials from the IRS.  (MFR Opp'n at 13.-14.)  This interpretation is supported by the fact that the document Defendant insists is the *correct* document also was not returned by the FOIA request given the language Defendant used.  (Id. at 14.)  The Government also argues that the purportedly forged document is substantially similar to another document whose veracity Defendant does not contest, which undermines the theory that the Receiver would have gone to the trouble of creating a forged document when a meaningfully similar legitimate document already existed.  (Id. at 12-13.)  Finally, the Government notes that Defendant has failed to file any exhibits supporting his MFR, including purported sworn declarations from IRS officials.[1]  (MFR at 4.)

Ultimately, such factual disputes about the propriety of a piece of evidence serve as a perfect example for why such considerations are not appropriately evaluated at this stage.

The Government also contends that Defendant's MFR is untimely and not based on newly discovered evidence.  (See Opp'n MFR at 10-11; L.R. 7-18.)  Under L.R. 7-18, "[a]bsent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order" underlying the motion.  It has been well over a year since the Court denied Defendant's First MTD on June 13, 2024.  (Dkt. No. 79.)  Defendant has not made such a good cause showing, nor has he explained why he, "with reasonable diligence, could not have" discovered this evidence earlier.  (See Rule 60(b).)  The allegedly forged document was submitted to the court in the civil action on September 15, 2021.  (Opp'n MFR at 11.)  If Defendant doubted the authenticity of that document, he could have investigated it at the time.  His efforts to do so now—and apparently without properly requesting the file that may contain this document in the IRS records—do not demonstrate the diligence necessary to raise a motion for reconsideration.

Based on the Court's previous ruling; Defendant's failure to provide evidence in support of his MFR; the evidentiary issues with the factual narrative advanced by the MFR; and Defendant's failure to timely file the MFR or demonstrate sufficient diligence, the Court **DENIES** Defendant's MFR.

## C.  MTS and ASP

Defendant cites no authority supporting his contention that Mr. Sebastian cannot properly litigate this case on behalf of the Government.  United States v. Weyhrauch is inapposite—it addresses the qualifications of the person who must *certify an appeal* under 18 U.S.C. § 3731, a statute that expressly provides for certification by "the United States attorney."  544 F.3d 969,

---

[1] The Government points out that Defendant has repeatedly ignored L.R. 7-5, which requires that a party include with a motion "[t]he evidence upon which the moving party will rely in support of the motion."  While the Court considers Defendant's MFR absent such evidence, the Court **ADMONISHES** Defendant for continuing to make deficient filings, and warns Defendant that future failures to abide by the Local Rules, including L.R. 7-5, will result in the Court striking pleadings.

972 (9th Cir. 2008).  This case involves no certification of an appeal, and <u>Weyhrauch</u> thus provides no insight into the propriety of Mr. Sebastian appearing for the Government.  <u>United States v. Providence Journal Co.</u> similarly offers no on-point authority on this subject.[2]  485 U.S. 693 (1988).  That case involved actions by a Government attorney before the Supreme Court who did not have authorization from the Solicitor General as was required by statute and regulation. <u>Id.</u> at 694–95.  Those specific statutes and regulations are not at issue in this case, which is before a District Court and not the Supreme Court.  As such, <u>Providence Journal Co.</u> does nothing to support Defendant's contentions.

Given the lack of any support for Defendant's contention that Mr. Sebastian is not authorized to represent the Government, Defendant's MTS and ASP are **DENIED**.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Application and **DENIES** Defendant's MFR, MTS, and ASP.  The Clerk is directed to issue a revised warrant nunc pro tunc to February 5, 2025.

**IT IS SO ORDERED.**

---

[2] The Court notes that it is unable to find several direct citations offered by Defendant purportedly from this case.  Counsel for Defendant is **ADMONISHED** to ensure all citations provided to this Court are accurate.  Future incorrect—and potentially manufactured—citations may result in sanctions.

CRIMINAL MINUTES—GENERAL            Initials of Deputy Clerk <u>mg</u>